**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **QIN ZHENG** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 26-7164** |
| **Warden JAMAL L. JAMISON, *et al.*** | : | |

**MEMORANDUM OPINION**

**Henry, J.** **November 18, 2026**

This case is before the Court on Qin Zheng's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief (ECF No. 2). Zheng challenges his current detention by Respondents at the Philadelphia Federal Detention Center after being arrested by Immigration and Customs Enforcement ("ICE"). Because I hold that Zheng's current detention violates the statutory authority granted to the Government in 8 U.S.C. § 1231, his Petition is **GRANTED** and his immediate release ordered.

## I. BACKGROUND

Zheng is a citizen of China. Pet. ¶ 28. He entered the United States without inspection on November 5, 1993. *Id.* ¶ 29. The Immigration and Naturalization Service initiated deportation proceedings against Zheng, scheduling a merits hearing for February 12, 1996. *Id.* ¶ 30. Zheng did not appear at this hearing, and the Immigration Judge entered an in-absentia deportation order against him, treating his application for relief as abandoned. *Id.* ¶¶ 31-32. In August 1996, Zheng filed a *pro se* motion to rescind the in-absentia order and to re-open his case, citing heavy traffic as the reason he did not appear at his hearing. *Id.* ¶ 33. The Immigration Judge denied his motion on or about September 10, 1996. *Id.* ¶ 35. The online EOIR Automated Case Information System

reports that the deportation decision was made on February 12, 1996 and that no appeal was received. *Id*. ¶ 36.

Zheng has resided in the United States since November 1993. *Id.* ¶ 39. He married Mei Guo, a United States citizen, in 2016. *Id.* ¶ 40. Zheng and his wife have jointly filed taxes from 2016 through 2023. *Id.* ¶ 43. His name appears on a deed for a property in Philadelphia and he and his wife had a restaurant business license valid through June 2025. *Id.* ¶¶44-45.

On October 3, 2016, USCIS received a Form I-130, Petition for Alien Relative, filed by Zheng's wife on his behalf. *Id.* ¶ 48. USCIS approved the Form I-130 petition on February 11, 2022, which establishes the existence of a qualifying family relationship for visa-processing purposes. *Id.* ¶ 50.

On April 1, 2024, USCIS received Zheng's Form I-212, Application for Permission to Reapply for Admission Into the United States After Deportation or Removal, which was approved on May 2, 2024. *Id.* ¶¶ 51-52. The application disclosed Zheng's 1996 deportation order, the lack of appeal, and Zheng's continuous residence in the United States and address. *Id.* ¶ 54. Approval of the application granted Zheng advance permission to apply for admission after departing the United States and obtaining an immigrant visa abroad. *Id.* ¶ 55.

On September 17, 2024, the National Visa Center processed an immigrant-visa application fee and affidavit-of-support review fee for Zheng's case. *Id.* ¶ 57. Then, on October 21, 2024, USCIS received Zheng's Form I-601A, Application for Provisional Unlawful Presence Waiver. *Id.* ¶ 58. The application disclosed that Zheng was subject to a final deportation order, as well as his Philadelphia address. *Id.* ¶ 59. The application remains pending. *Id.* ¶ 60.

ICE arrested Zheng on September 15, 2026. *Id.* ¶ 64. He is presently confined at the Federal Detention Center in Philadelphia. *Id.* ¶ 67. He filed the current Petition on September 16, 2026, alleging that his detention exceeds the statutory authority granted to ICE pursuant to 8 U.S.C.

§ 1231 and pursuant to the limit for detention set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001), that his detention violates 8 C.F.R. §§ 241.3 and 241.4 and the *Accardi* doctrine, that Respondents must provide special administrative review required by 8 C.F.R. § 241.13, and that his detention violates procedural and substantive due process.

## II. DISCUSSION[1]

Zheng's detention is governed by 8 U.S.C. § 1231, which pertains to the detention and removal of individuals who have been ordered removed. Relevant to this case, the statute provides that, with some exceptions provided for in the statute, when a noncitizen has been ordered removed, the Attorney General shall remove them from the United States within a 90-day "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of either: "(i) [t]he date the order of removal becomes administratively final; (ii) [i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) [i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Detention is mandatory during the removal period. *See* 8 U.S.C. § 1231(a)(2)(A).

If the individual does not leave or is not removed during the removal period, then "pending removal, [they] shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). However, they may be detained beyond the removal period if

[1] As an initial matter, in its brief in opposition to the Petition, the Government argues that the Court lacks jurisdiction to consider the claim under 8 U.S.C. § 1252(g) because Zheng is challenging the decision to remove him, not his detention. However, it is clear in the Petition that the relief Zheng seeks is release from detention until removal is reasonably foreseeable. As this is a challenge to detention, not a decision to remove, 8 U.S.C. § 1252 does not bar this Court's jurisdiction. *See Zadvydas v. Davis*, 533 U.S. 678, 688, (2001) ("[H]abeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

they are "inadmissible under section 1182 of [Title VIII], removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of [Title VIII] or [have] been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

The seminal case on detention beyond the 90-day removal period is *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court read an "implicit limitation" into Section 1231(a)(6), "limit[ing] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. It held that six-months of detention post-removal-period was presumptively reasonable, and after that six-month period, if the non-citizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond to rebut that showing. *Id.* at 701.

Zheng argues that ICE exceeded its statutory authority in detaining him because Section 1231 does not authorize discretionary arrest decades after the 90-day removal period expired. The parties disagree as to when the 90-day removal period began and when the six-month presumptively reasonable period of detention set forth by *Zadvydas* began.

**a. The 90-Day Removal Period**

Because his order of removal became final in 1996 and no other event described in 8 U.S.C. § 1231(a)(1)(B) has occurred to otherwise trigger the 90-day removal period, Zheng argues, the 90-day removal period began on the day his order of removal became final in 1996 and expired 90 days thereafter. Pet. ¶¶ 109-113. Respondents agree that Zheng's removal order became administratively final in 1996, but contend that nothing in the INA indicates that "the statutory removal period for *detention purposes* is limited to the first ninety days after a removal order becomes administratively final." Opp. at 6-7. If the Court adopts Zheng's argument, Respondents say, "ICE would lack the statutory authority to detain any noncitizen for removal purposes,

including those whose whereabouts may not have been known to the agency, unless it did so within the first ninety days after their removal order became administratively final." *Id.* at 7.

I disagree. Section 1231(a)(1)(B) establishes a 90-day removal period during which detention is *mandatory*. The statute further provides for extended detention or supervised release in the event a noncitizen is not removed in those first 90 days. But the statute does not address situations in which a noncitizen is never detained following the finalization of an order of removal, leaving the Court with a gray area. I find it unlikely that, in enacting Section 1231, Congress intended to allow a noncitizen subject to a final order of removal to avoid ever being removed so long as they can avoid detention for 90 days after their removal order becomes final. Such a result, as Respondents suggest, would be absurd. But that does not mean that the 90-day mandatory detention period can begin at any time the non-citizen is detained—"the statute provides for a limited, ninety-day period of mandatory detention authority, and it is clear about when that period begins and ends." *Diallo v. Joyce*, 817 F. Supp. 3d 202, 207 (S.D.N.Y. 2025). And that does not mean that there are not situations in which detention outside of the 90-day period may be proper. For example, in *Diallo*, in holding that the "continued detention" provided for in Section 1231(a)(6) is not a "free-roaming right to arrest and detain people any time [the government] sees fit," the court acknowledged that nothing in its holding meant that the government could not remove the petitioner or, if removal were imminent, the government could not briefly detain the petitioner for the purpose of effecting removal. *Diallo*, 817 F. Supp. 3d at 205, 208. Indeed, "[a] detention [to effect removal] might reasonably be thought of as implicit in the concept of 'removal' itself." *Id.* at 208. I agree with the reasoning in *Diallo* and hold that Zheng's 90-day removal period expired in 1996, but that does not mean that detention outside of that period is impossible.

**b. The *Zadvydas* Presumptively Reasonable Detention Period**

Having held that the 90-day removal period has expired, the next question for the Court is whether Zheng's detention falls within or outside of the *Zadvydas* six-month presumptively reasonable detention period. Zheng submits that the *Zadvydas* period must run as an extension of the initial 90-day removal period, so any detention that begins at some time after six months from a removal order becoming administratively final is not entitled to a presumption of reasonableness. Pet. at ¶¶ 114-15. Zheng argues that to hold otherwise would allow the government to "wait indefinitely, arrest at will, release, and arrest again, each time invoking a new presumptively reasonable detention period." *Id.* ¶ 116. Thus, Zheng would have the Court hold that the "presumptively reasonable" six-month period of detention is inapplicable here, where his removal order became final, triggering Section 1231(a), in 1996.

Respondents, on the other hand, contend that the *Zadvydas* presumptively reasonable detention clock begins at the time of detention, not when Zheng's removal order became final. Opp. at 9. Respondents argue that on practical grounds, accepting Zheng's argument would "temporally limit ICE's ability to detain and remove those with final orders of removal." *Id.*

Thus, the question is whether detention "beyond" the removal period as it appears in Section 1231(a)(6) means solely detention "as an extension of" the removal period or whether it could also mean detention "for the first time" after the removal period.

Courts are split on how to interpret "beyond the removal period," and there is no binding precedent on the matter in the Third Circuit. Some courts hold that "beyond the removal period" indicates *continued* detention, not detention anew at some point after the expiration of the 90-day removal period. *See, e.g.*, *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205 (S.D.N.Y. 2025) ("Section 1231(a)(6) provides for a period of *continued* detention for certain classes of people who have not been removed at the conclusion of the ninety-day removal period." (emphasis in original); *Parra*

*v. Favro*, No. 26-cv-363, 2026 WL 1030870, at *4-5 (N.D.N.Y. Apr. 16, 2026); *De Aguiar v. Rokosky*, No. 25-cv-18581, 2026 WL 1123571, at *1 (D.N.J. Apr. 17, 2026) ("Section 1231(a)(6) provides for 'further' . . . detention of aliens who are already detained during the mandatory 90-day detention period."). Others hold that Section 1231 allows for detention for the first time after the 90-day removal period has expired and deny habeas relief so long as the petitioner was detained for less than six months at the time of filing a petition. *See Suthar v. Jamison*, No. 26-cv-3031, 2026 WL 1588000 (E.D. Pa. June 3, 2026); *Cantillano v. Jamison*, No. 26-cv-3787, 2026 WL 1707615 (E.D. Pa. June 12, 2026).

The Tenth Circuit recently decided the issue in *Abedi v. Carter*, No. 25-3179, 2026 WL 3149141 (10th Cir. Oct. 21, 2026). There, the court held that "*Zadvydas*'s six-month presumption applies only to the first six months that elapse after the removal period is triggered." *Id.* at *26. In so holding, the court looked to "the primary reason" for the six-month presumption, which is "the reality that arranging a noncitizen's removal may take longer than the current ninety-day removal period." *Id.* at *27. That purpose, the court held, "does not apply to periods of re-detention that occur months, years, or decades after the removal order has become final." *Id.* I agree with the reasoning set forth in *Abedi* and thus hold that the six-month *Zadvydas* period began to run after Zheng's removal order became administratively final in 1996.

**c. Reasonable Foreseeability of Removal**

Because Zheng's detention is outside of the presumptively reasonable period set forth in *Zadvydas*, the Court must next determine whether he has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Zheng argues that he has shown good reason to believe removal is not reasonably foreseeable because he did not have a passport or travel document with him when he was arrested, the Government has not disclosed any current travel document or itinerary, and there has been no

indication of a consular interview or a scheduled removal date. *See* Pet. ¶¶ 145-149. Additionally, despite his various applications to USCIS over the years disclosing his residence, the Government has taken no action to effectuate his removal. This is sufficient to show that there is good reason to believe removal is not reasonably foreseeable. *See, e.g.*, *Qiu v. Mullin*, No. 26-cv-520, 2026 WL 1679265, at *3 (E.D. Wis. June 10, 2026) (holding that the petitioner showed that there was good reason to believe removal was not reasonably foreseeable where the application for travel documentation for the petitioner was "in process with the Chinese Government" and ICE anticipated receiving the requested documents "in the foreseeable future"); *Ahmed v. Freden*, 744 F. Supp. 3d 259, 266 (W.D.N.Y. 2024) (holding that the petitioner met his burden of showing removal was not reasonably foreseeable where there was no information before the Court "demonstrating that ICE has made progress in repatriating Petitioner"); *Egharevba v. Benzel*, No. 26-cv-10628, 2026 WL 2655018, at *5 (D.N.J. Sept. 9, 2026) ("Where, as here, the Government has taken no meaningful steps for years to effectuate removal, a noncitizen will have little difficulty providing 'good reason to believe that there is no *significant* likelihood of removal in the reasonably foreseeable future.'").

The Government rather conclusively asserts that "Petitioner has not met his burden of proof, meaning the government need not respond with any evidence to rebut Petitioner's arguments at this time." Opp. at 10-11. I disagree with this position, as Plaintiff has set forth evidence that there are no pending travel documents or scheduled removal. The Government has provided nothing to rebut that. Because Zheng has carried his burden of showing removal is not reasonably foreseeable, coupled with the Government's failure to rebut that showing, Zheng's detention exceeds the bounds of detention following the six-month presumptively reasonable

period permitted by *Zadvydas*. Because this statutory violation warrants his release from detention, I need not reach Zheng's other arguments for release.

## III. CONCLUSION

Zheng is currently detained in violation of Section 1231(a) and *Zadvydas*, and as such, his Petition is granted and his immediate release is ordered under reasonable conditions of supervision consistent with 8 U.S.C. § 1231(a)(3).